IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VERITAS VINCIT, LLC, WILLIAM BERRY DEAN III, | § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § § | CIVIL ACTION NO.  4:24-CV-00079-JRG |
| FRED ALAN BROWN, CHARLES WILLIAM DURHAM, II,  BIRNAM WOOD CAPITAL, LLC, RETICULUM MANAGEMENT, LLC | § § § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss Due to the Absence of a Justiciable Case or Controversy Under Article III of the Constitution (the "Motion to Dismiss") (Dkt. No. 111) and the Motion for Leave to File the Motion to Dismiss (the "Motion for Leave") (Dkt. No. 110) filed by Defendants Charles William Durham, II ("Durham") and Birnam Wood Capital, LLC ("Birnam Wood") (collectively, "Durham Defendants").[1]

### I.  BACKGROUND

What started as a simple business deal in the amount of $400,000 has resulted in no fewer than ten lawsuits, bankruptcies (on both sides), criminal indictments, bar grievances, and a seemingly complete breakdown of civility. Plaintiffs and Defendants in this case have spun a small but seemingly genuine disagreement into nearly a decade of discord and financial ruin. While

---

[1] Also before the Court is Defendant Brown's Adoption of Durham and Birnam Wood's Motion for Leave to File Motion to Dismiss Due to the Absence of a Justiciable Case or Controversy Under Article III of the Constitution (the "Adoption"). (Dkt. No. 113). In the Adoption, Defendant Brown "adopts [the Motion to Dismiss] as the argument and authorities are identical as to each defendant." (*Id.*).

many other courts have walked through the background of these parties' disputes[2], another recitation of those facts is necessary to resolve the present Motion to Dismiss.[3]

### A.  The Inciting Event

In the summer of 2015 Plaintiff William Berry Dean, III ("Dean") was the part-time CFO of an entity named Total Operating, a company in the pipeline construction and maintenance industry. (Dkt. No. 63 at 5). Total Operating was in need of additional financing (roughly $500,000) to support its work for a company called Jetta Resources. (*Id.*). In an effort to secure this funding, Total Operating's CEO, non-party Jacob Watters ("Watters"), reached out to Defendant Charles William Durham, II ("Durham") about potential sources of capital. (*Id.*). Durham suggested that Watters speak with Defendant Fred Brown ("Brown") who, at that time, was a client of Durham's. (*Id.*).

Ultimately, Defendant Brown agreed to fund $400,000 through various related entities and Russel Watters (Jacob Watter's father) supplied the remaining $100,000 to Total Operating. (*Id.*). Plaintiffs contend that Defendant Durham: (1) acted as Brown's financial advisor in connection with the transaction, (2) received a commission in connection with the deal, and (3) agreed to allow the parties to use one of his entities, Defendant Reticulum Management, LLC ("Reticulum"), to facilitate the transaction. (*Id.*).

The specific terms of the transaction between Reticulum and Total Operating give rise to the issues that have followed since. Due to issues with Total Operating's senior secured lender (Capital One) being unwilling to agree to a second lien on Total Operating's assets, the transaction was not done as a loan, but rather in the form of a Sale and Buyback Agreement. Under the Sale

---

[2] *See, e.g.*, *In re Dean*, 620 B.R. 271, 274–76 (Bankr. N.D. Tex. 2020); *In re Watters*, No. 20-30553, 2021 WL 3744408, at *2–6 (Bankr. N.D. Tex. Aug. 24, 2021).

[3] For purposes of establishing the necessary context for resolving the Motion to Dismiss, the Court relies upon the parties' summary judgment briefing filed in this case and the exhibits attached thereto.

and Buyback Agreement, Reticulum purchased Total Operating's profits from its Jetta project, with Total Operating having the option to buy back the profits by October 30, 2015. (*Id.* at 6). Defendant Brown claimed to believe that the transaction was highly collateralized, however he never reviewed the Sale and Buyback Agreement, relying instead on his financial advisor (Durham) to review the agreement. (*Id.*). Plaintiff Dean signed the Sale and Buyback Agreement as Total Operating's CFO, but he insists that he never had any discussions with Defendants about a bridge loan or the Sale and Buyback Agreement prior to its execution. (*Id.*). Plaintiffs contend that this is supported by Watters who testified that he (Watters) was the only person who met and spoke with Durham and Brown regarding the Sale and Buyback Agreement. (*Id.*).

Not long after the parties entered into the Sale and Buyback Agreement, Total Operating was unable to repay the amounts it owed in connection with the agreement. (*Id.*). It is at this point where the Court notes that the train appears to have come off the track. According to Plaintiffs, "Durham schemed to have Watters sign a security agreement because Durham knew that he (Durham) had entered an agreement on behalf of his client (Brown) that provided for no security when his client, Brown, (mistakenly) though the deal was 'highly collateralized.'" (*Id.*). Watters ultimately executed a Security Agreement related to the Sale and Buyback transaction in late May 2016 which purported to be effective as of October 30, 2015 (seven months prior to its signing). (*Id.*). Plaintiffs contend that "documentary evidence shows that the Security Agreement was executed in May 2016 to (improperly) attempt to give Reticulum preferential treatment in Total Operating's forthcoming bankruptcy." (*Id.*). In a June 28, 2016 email from Watters to Durham, Watters admits that the Security Agreement was "executed [as] a post haste security agreement not in or around October, but in May/June period." (*Id.* at 9). Watters noted, that "[w]e all know this," and that "[t]his was all at the expense of other creditors." (*Id.* (quoting Dkt. No. 63-5 at 4)). Durham

has since admitted that there was no promissory note and that the Security Agreement was not executed on or about October 30, 2015. (*Id.* (citing Dkt. No. 63-3 at 255:10–245:19)).

After Total Operating filed for bankruptcy and Reticulum's status as a secured creditor was disputed by Dean—at which time Defendants determined that there would be "nothing left for us"—Defendants concluded that "[t]he only way we can get any recovery is if [Dean] and [Mr. Watters] are found to have committed a felony and we can get a personal judgment against both":

It appears that there is not enough equipment (value) to satisfy Capital One's note (and therefore nothing left for us).

==The only way we can get any recovery, is if Barrett & Jacob are found to have committed a felony and we can get a personal judgement against both.==

(*Id.* at 10 (quoting Dkt. No. 63-15 at 2 (excerpted above, highlighting by Plaintiffs))).

Subsequently, Durham and Brown alleged that Dean was involved in the events leading up to the execution of the agreement and, in Plaintiffs' view, falsely claimed that Dean made misrepresentations that induced Reticulum to sign the agreement. (*Id.*).

## B.  The Lawsuits Against Dean[4]

As detailed in Plaintiffs' Response to the Durham Defendants' motions for summary judgment, over the course of five years, "Reticulum (with the assistance of Brown, Durham, and Birnam Wood) caused at least *eleven* civil and criminal proceedings to be initiated related to the Sale and Buyback Agreement, including at least *seven* proceedings against *Dean*, his family members, friends and affiliated businesses." (*Id.* at 11). These proceedings are shown in the table below:

| # | Case |
|---|------|
| 1 | *Reticulum Management, LLC v. Total Operating, LLC*, Cause No. DC-16-07521, filed in the 14th Judicial District Court of Dallas County, Texas |

---

[4] Defendants dispute that many of these lawsuits are fairly attributable to them.

| 2 | *In re Reticulum Management, LLC*, Cause No. DC-17-06211, filed in the 193rd Judicial District Court of Dallas County, Texas (Reticulum's Verified Petition to Take Depositions of and Request Documents From Jacob F. Watters and Barrett Dean to Investigate Potential Claims) |
|---|---|
| 3 | *Reticulum Management, LLC v. Barrett Dean and Jacob F. Watters*, AAA Case No. 01-17-0006-8709, filed with the American Arbitration Association |
| 4 | *Reticulum Management, LLC v. Russell Watters*, Cause No. DC-18-08897, filed in the 14th Judicial District of Dallas County, Texas |
| 5 | *Reticulum Management, LLC v. Knapp Chevrolet, Inc.*, Cause No. 201869900, filed in the 151st Judicial District Court of Harris County, Texas |
| 6 | *Reticulum Management, LLC v. Jacob F. Watters*, Cause No. DC-19-05004, filed in the 14th Judicial District Court of Dallas County, Texas |
| 7 | *Reticulum Management, LLC v. William Berry Dean, III*, Adv. No. 19-03242, filed in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division |
| 8 | *Scott M. Seidel, as Chapter 7 Trustee of the Estate of William Berry Dean, III v. William Berry Dean, III, William Berry Dean, II and Stephanie Knapp Dean*, Adversary Proceeding No. 20-03141-sgj, filed in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division |
| 9 | *Scott M. Seidel, as Chapter 7 Trustee of the Estate of William Berry Dean, III v. William Berry Dean, III, Craftsman Capital Partners, LLC, William Berry Dean, II and Amy Arquilla Dean, as Trustees of the William B. Dean III Irrevocable Trust and the William B. Dean III Irrevocable Trust*, Adversary Proceeding No. 20-03140-sgj, filed in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division |
| 10 | Criminal Complaint filed by Fred Alan Brown of Reticulum Management, LLC against William Barrett Dean, III, Dallas County, Texas, with Affidavit signed January 31, 2018, F-2000230 & F-2000231 |
| 11 | Criminal Complaint filed by Fred Alan Brown of Reticulum Management, LLC against Jacob F. Watters, Dallas County, Texas, with Affidavit signed January 31, 2018, F-2000228 & F-2000229 |

*See* (Dkt. No. 63-2 (Dean Decl.), ¶ 25). Plaintiffs' listing of proceedings include seven civil actions initiated directly by Defendant Reticulum (#1–#7 above), two civil actions initiated by the Trustee of Mr. Dean's estate in bankruptcy who engaged in a litigation funding agreement with Reticulum (#8 and #9 above), and two criminal complaints filed by Defendants Brown and Reticulum that resulted in criminal indictments of Plaintiff Dean that were ultimately dismissed (#10 and #11 above). (*Id.*).

In the Arbitration (Proceeding #3) filed by Reticulum against Dean and Watters, Reticulum alleged "that they had committed fraud, fraud by nondisclosure, fraudulent inducement, and

negligent misrepresentation by making misrepresentations to induce Reticulum into loaning $500,000 to Total Operating and signing the Sale and Buyback Agreement." (*Id.* (citing Dkt. No. 63-2, ¶ 26)). During the Arbitration, "Watters and Dean testified that Dean never had any relevant communications regarding the transaction prior to the execution of the Sale and Buyback Agreement," however "both Durham and Brown . . . testified in the Arbitration that the opposite was true." (*Id.* at 12). After the hearing in the Arbitration, the Panel entered an Interim Award against Dean and Watters, finding that they were liable to Reticulum for negligent misrepresentation" but "den[ying] Reticulum's claims against Dean and Watters for fraud, fraud by non-disclosure, and fraudulent inducement." (*Id.*). On January 9, 2019, subsequent to the entry of the Interim Award, Dean filed for relief under Chapter 7 of the Bankruptcy Code. (*Id.* (citing Dkt. No. 63-2, ¶ 30)).

### C.  The Present Case

Fast-forwarding to the present day, Plaintiffs Veritas Vincit, LLC[5] ("Veritas Vincit") and William Berry Dean, III ("Dean") (collectively, "Plaintiffs") assert three causes of action in this case: (1) malicious criminal prosecution against Defendants Reticulum and Brown; (2) malicious civil prosecution against Defendant Reticulum; and (3) conspiracy against all of the defendants. (Dkt. No. 105 at 2–3).

During discovery in this case, Plaintiffs served requests for production on the Durham Defendants. (Dkt. No. 93 at 1). In response to those requests, the Durham Defendants served a privilege log identifying 2,274 documents (the "Withheld Documents") withheld from production on the basis of privilege claims by Defendant Reticulum, a company then owned by Defendant

---

[5] Plaintiff Veritas Vincit was formed on October 23, 2020 and as of April 2022 was 99% owned by the William B. Dean, III Irrevocable Trust (an irrevocable trust set up for Plaintiff Dean's benefit) and 1% by William B. Dean, Jr. (Plaintiff Dean's father). (Dkt. No. 114 at 3–4). In April 2022, "VV Funding LLC purchased 1% of the William B. Dean, III Irrevocable Trust's interest in Veritas Vincit." (*Id.* at 4).

Fred Alan Brown. (*Id.*). On April 1, 2024, Reticulum was sold at an auction held by the trustee of Defendant Brown's bankruptcy estate to non-party Fiduciario, LLC ("Fiduciario"). (Dkt. No. 93 at 1–2). Fiduciario is an entity owned 50% by Plaintiff Veritas Vincit and 50% by non-party 4222014, LLC, which is itself 100% owned and managed by Jacob Watters. (Dkt. No. 114 at 3). Fiduciario was formed on March 30, 2024 (two days before it was used to purchase Reticulum). (*Id.*).

On April 3, 2024, two days after Fiduciario purchased Defendant Reticulum at auction, Plaintiffs requested that the Durham Defendants promptly produce the Withheld Documents. (*Id.*). Attached to this request was a letter from Reticulum that directed the Durham Defendants to produce the Withheld Documents and waived Reticulum's privilege claims over the same:

April 3, 2024

To Whom It May Concern:

As of April 1, 2024, Fiduciario, LLC owns Reticulum Management, LLC.

Please accept this letter as a directive and consent for you and your law firm to produce any and all materials disclosed on any privilege log served on behalf of Charles William Durham, II relating to the cases styled *Veritas Vincit, LLC et al. v. Fred Alan Brown et al.*, Cause No. DC-21-17503 (14th Judicial District, Dallas County, Texas) and *Veritas Vincit, LLC et al. v. Fred Alan Brown et al.*, Case 4:24-cv-00079-JRG (E.D. Tex.) that have been withheld on account of any purported privilege held by Reticulum Management, LLC.

Reticulum Management, LLC waives any privilege, including but not limited to the attorney-client privilege, common-interest privilege, and/or attorney-work product privilege, over the materials listed on any such log.

Sincerely,

**RETICULUM MANAGEMENT, LLC**

By: _____

William Berry Dean, III, on behalf of Veritas Vincit LLC, a member of Fiduciario, LLC

By:_____

Jacob F. Watters, on behalf of 4222014, LLC, a member of Fiduciario, LLC

7

(Dkt. No. 93-1 at 3 (highlighting added by Plaintiffs)). This letter from Reticulum was signed by Plaintiff Dean "on behalf of" Plaintiff Veritas Vincit, as well as by Watters on behalf of 4222014, LLC. (*Id.*). Upon motion by the Plaintiffs, the Court ordered the Durham Defendants to produce the Withheld Documents as no valid privilege claim remained. (Dkt. No. 101). The Durham Defendants now contend that Plaintiffs effectively control Defendant Reticulum in this action and, as a result, no genuine "case or controversy" remains to be decided by this Court, necessitating dismissal. (Dkt. No. 111).

## II.   MOTION FOR LEAVE

In the Motion for Leave, the Durham Defendants argue that "[g]ood cause exists [for leave to file the Motion to Dismiss] because the lack of genuine adversity between the parties cannot be waived, cannot be cured, and requires the Court to dismiss." (Dkt. No. 110 at 1). The Durham Defendants further state that "[t]here is no prejudice to the parties because parties cannot waive such a defect in the Court's authority to hear a suit, and the court can raise the issue *sua sponte* at any time in the proceeding either at trial or on appeal." (*Id.* at 2).

In response, Plaintiffs argue that that leave to file the Motion to Dismiss should be denied because the Durham Defendants "knew, at least as early as April 3, 2024 (when Reticulum waived privilege), that Reticulum's new owner was Fiduciario, and that Plaintiff Veritas Vincit was a member of Fiduciario and Plaintiff Dean acted on behalf of Veritas Vincit." (Dkt. No. 114 at 17). Plaintiffs argue that "[w]hile lack of subject-matter jurisdiction may generally be raised at any time (including on appeal), and the Court may *sua sponte* address its own subject-matter jurisdiction, that does not justify the Durham Defendants' failure to comply with the Court's Docket Control Order [to file motions that may require a hearing by April 30, 2024]." (*Id.*).

The Court finds that given the recent nature of the precipitating events giving rise to the Motion to Dismiss—namely, Fiduciario's acquisition of Defendant Reticulum in April of this year, the parties' briefing on the motion to compel, and the issuance of the Court's Order on the same on July 11, 2024 (Dkt. No. 101)—the Durham Defendants have not been dilatory in bringing the Motion to Dismiss. Moreover, "it is the duty of a court to make such inquiry, in order that it may not be imposed on by an apparent controversy to which there are really no adverse parties." *Hatfield v. King*, 184 U.S. 162, 165 (1902). As such, the Court finds good cause exists for granting the Durham Defendants leave to file the Motion to Dismiss.

Having considered the Motion for Leave, and having found that good cause supports granting the Durham Defendants leave to file the Motion to Dismiss, the Court finds that the Motion for Leave should be and hereby is **GRANTED**.

## III.   MOTION TO DISMISS

Having determined that Plaintiffs' Motion to Dismiss (Dkt. No. 111) is properly before it, the Court next addresses the merits.

### A.  Whether the Court Has Jurisdiction to Hear the Claims Against Reticulum

In the Motion to Dismiss, the Durham Defendants argue that "[b]ecause Plaintiffs Veritas and Dean now own and control Reticulum, which is the primary defendant, this litigation has ceased to be between genuinely adverse parties and, therefore, the Court lacks authority under Article III of the Constitution to render any judgment and should dismiss the suit." (Dkt. No. 111 at 1). The Durham Defendants contend that "Plaintiffs have already puppeted Defendant Reticulum in this case to waive privilege over withheld documents, and already enlisted the Court to issue rulings against the Durham Defendants by manipulating parties on both sides of this now-pretend dispute between non-adverse parties." (*Id.* at 1–2). The Durham Defendants argue that

"[t]he Supreme Court has been clear that where, such as here, a party controls both the plaintiff and defendant to a lawsuit, there is no Constitutional 'case' or 'controversy' for a court to adjudicate," requiring dismissal. (*Id.* (citing *South Spring Hill Gold Min Co. v. Amador Medean Gold Min Co.*, 145 U.S. 300, 301 (1892) ("We cannot ... consent to determine a controversy in which the plaintiff has become the *dominus litis* on both sides."))).

With respect to its allegation that Plaintiffs control Reticulum, the Durham Defendants note that "Plaintiffs have [] submitted records to the Court reflecting that Fiduciario owns Reticulum, that Plaintiff Veritas is a member of Fiduciario, that Plaintiff Dean is a member of Plaintiff Veritas, and that Plaintiff Dean has authority to sign a letter on behalf of Reticulum." (*Id.* at 4 (citing Dkt. No. 93-1 at 3 (April 3, 2024 letter from Fiduciario, signed by Dean and Watters representing members of Fiduciario, directing the production of Reticulum's privileged documents); Dkt. No. 47-3 (Bill of Sale and Assignment of Member Interest of Reticulum to Fiduciario listing Dean as Fiduciario's "Manager")), 9 (citing Dkt. No. 47-4 at 3 (Report of Sale listing the purchaser of Reticulum as "Fiduciario, LLC, as the designee and assignee of Jacob F. Watters and William Berry Dean, III (the Buyers)").[6] Defendants argue that "[w]hile Plaintiffs may assert that they do not fully own and control Defendant Reticulum due to their creation of new entities and the obtuse relationships between the companies involved, it is clear that both Plaintiffs and Defendant Reticulum now 'serv[e] the same masters' in relation to this lawsuit as a result of Defendant Reticulum's waiver of privilege." (*Id.* at 9 (quoting *Nikko Trading of Am. Corp. v. WasteMasters, Inc.*, No. 3:98-CV-0048, 2000 WL 284190, at *2 (N.D. Tex. Mar. 14, 2000))).

---

[6] Furthermore, the Durham Defendants contend, "the documents submitted to the Court by Plaintiffs also reflect that Plaintiffs' legal counsel almost certainly also represents Reticulum, considering that Plaintiffs' legal counsel transmitted the letter from Reticulum—signed by Dean—to Durham Defendants' counsel." (*Id.* (citing Dkt. No. 93-1 at 1–2)). The Court finds such argument unconvincing on the limited evidence presented and need not reach it to dispose of this issue.

In response, Plaintiffs argue that "neither Plaintiff (including via Reticulum's owner Fiduciario) owns or controls Reticulum, so there remains a live case-and-controversy even as to Reticulum." (Dkt. No. 114 at 1). Specifically, Plaintiffs contend that "Plaintiff Vertis Vincit is only a 50% owner of Reticulum's current owner (Fiduciario, LLC ('Fiduciario'))," and that "[t]he other 50% of Fiduciario is held by a non-party (4222014, LLC, which is owned by yet another non-party, Jacob Watters)." (*Id.*). Plaintiffs argue that "[b]ecause Plaintiffs do not own or control Reticulum, nor do they own more than 50% of Reticulum's owner (Fiduciario), the Court should deny the Durham Defendants' Motion," as "[a] 50% owner of an LLC (such as Fiduciario) cannot, on its own, direct the filing and prosecution of a lawsuit, as such activities are not within the ordinary course of an LLC's business." (*Id.* at 5–6 (internal quotations omitted)). In sum, Plaintiffs argue that "because neither Plaintiff owns a controlling interest in Defendant Reticulum's owner— Fiduciario—the Court should deny the Durham Defendants' Motion to Dismiss." (*Id.* at 12).

The Court finds that Plaintiffs do in fact control Defendant Reticulum and that no case or controversy exists between Plaintiffs and Reticulum, necessitating Reticulum's dismissal from the present case. As Plaintiffs note, subject matter jurisdiction and standing are assessed on a party-by-party, claim-by-claim basis. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."). Here, Plaintiffs do not contest that if they are found to control Defendant Reticulum, then no genuine "case or controversy" exists as to that entity; rather, Plaintiffs only argue that they do not in fact own and control Defendant Reticulum. *See, e.g.*, (Dkt. No. 114 at 1, 6, 12). On the record before it, the Court rejects that argument.

As of April 1, 2024, Defendant Reticulum became wholly owned by Fiduciario. (Dkt. No. 114 at 3). Fiduciario is 50% owned by Plaintiff Veritas Vincit, which itself is roughly 98% owned by the William B. Dean, III Irrevocable Trust—an irrevocable trust set up for Plaintiff Dean's benefit. (*Id.* at 3–4). The remaining 50% of Fiduciario is owned by 4222014, LLC, which is itself owned 100% by Jacob Watters. (*Id.* at 3).

As explained in the Background section, Jacob Watters is not some disinterested third party as Plaintiffs seem to suggest. *See supra* §§ I.A.–I.B. Quite to the contrary, Watters was the CEO of Total Operating at the time the initial dispute arose between these parties, was himself the subject of numerous lawsuits brought by Reticulum over the same transaction—at least three of which feature in Plaintiffs' claims of malicious civil and criminal prosecution in this case—and was himself brought to bankruptcy by Reticulum's suits. *See id.* (Proceedings #3, 6, and 11 all naming Jacob Watters specifically); *In re Dean*, No. 19-31232, 2021 WL 5762947, at *1 (Bankr. N.D. Tex. Dec. 3, 2021) ("Watters later himself filed a Chapter 7 case after the Final Arbitration Award against him."); *In re Watters*, No. 20-30553, 2021 WL 3744408 (Bankr. N.D. Tex. Aug. 24, 2021). Indeed, Plaintiffs cite testimony from Watters in support of their claims in this case. *See, e.g.*, (Dkt. No. 63 at 29 ("[A]s Dean and ***Watters*** have consistently and adamantly testified . . . .") (emphasis added) (citing Dkt. No. 63-66, ¶¶ 5, 112, 114)). Jacob Watters has also submitted declarations in this case in support of Plaintiffs. *See, e.g.*, (Dkt. No. 63-5 (Declaration of Jacob Watters)). To argue that Watters is some disinterested third party, as opposed to one aligned in interest with Plaintiffs, strains credulity; rather, Watters is a central figure in both the underlying dispute and many of the cases which Plaintiffs now point to in support of their claims for malicious prosecution. Even though they might like it to be, Watters' 50% ownership of Fiduciario is not a magic wand waiving over this issue in Plaintiffs' favor.

The form of ownership of Reticulum being currently structured such that Plaintiffs share full ownership of that entity with a fully aligned individual (Jacob Watters) does not allow or permit the Court to blind itself to the plain facts of this case. To permit such an apparent artifice of form over substance to rule the day would effectively destroy the Constitution's limitation on federal courts' authority to adjudicate only genuine cases or controversies. U.S. CONST. ART. 3, § 2, cl. 1. As the Supreme Court has repeatedly explained, "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). The Court has emphasized the necessity of looking past the nominal posture of the parties to determine whether a genuine case or controversy actually exists. *See, e.g.*, *Lord v. Veazie*, 49 U.S. 251, 255 (1850) ("[A]ny attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, ***when there is no real and substantial controversy between those who appear as adverse parties to the suit***, ***is an abuse which courts of justice have always reprehened***[.]") (emphasis added). Upon inspection, it is clear to this Court that no genuine case or controversy exists as to these parties.

When Plaintiffs, acting through an entity who they control (Fiduciario), acquired Defendant Reticulum, they eliminated any genuine case or controversy between themselves and Reticulum. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997) ("[F]ederal courts lack [] authority to act in friendly or feigned proceedings.").[7] Even absent concerns of collusion (discussed in greater detail hereafter), "a federal court [can]not adjudicate an action between two

---

[7] It is immaterial that Fiduciario only acquired Reticulum years into this proceeding because "[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Id.* at 64, 70 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

corporations controlled by the same person, even if one of the corporations ha[s] some minority shareholders." *Dasma Invs., LLC v. Realty Assocs. Fund III, L.P.*, 459 F. Supp. 2d 1294, 1304 (S.D. Fla. 2006) (dismissing claims brought by plaintiff Dasma against defendant PWC due to lack of a justiciable case or controversy where "[i]t is undisputed that Ms. Padron controls both Dasma and PWC: she is the only member and registered agent of Dasma (the plaintiff), and she is the majority shareholder and sole officer of PWC (one of the defendants)"); *see also S. Spring Hill Gold-Min. Co.*, 145 U.S. at 301 (holding that where on appeal "the control of both the corporations, parties to this suit, had come into the hands of the same persons," "the litigation has ceased to be between adverse parties, and the case therefore falls within the rule applied where the controversy is not a real one" regardless of minority shareholders in one of the corporations).

The Court is left without any reasonable doubt that Plaintiffs—with the passive consent of, or in active coordination with, Jacob Watters—effectively control Defendant Reticulum. As noted by the Durham Defendants, Plaintiffs have placed documents in the record reflecting that: (1) Plaintiff Dean is a Manager of Fiduciario (Dkt. No. 47-3 at 5; Dkt. No. 114 at 3); (2) Plaintiff Dean is authorized to sign for Plaintiff Veritas (*id.*); (3) Plaintiff Veritas is a member of Fiduciario (Dkt. No. 114 at 3); (4) interested-party Jacob Watters, through 4222014, LLC, is the only other member of Fiduciario (*id.*); (5) Fiduciario owns Defendant Reticulum (*id.*); and (6) Fiduciario is the designee and assignee of Plaintiff Dean and Jacob Watters (Dkt. No. 47-4 at 3). Moreover, Plaintiffs have exerted control over Reticulum in this case specifically to gain advantage over Defendants by intentionally waiving Reticulum's privilege over thousands of documents held by the Durham Defendants. Notably, Reticulum's waiver of privilege was signed by Plaintiff Dean and Mr. Watters:

Sincerely,

**RETICULUM MANAGEMENT, LLC**

By: _____

William Berry Dean, III, on behalf of Veritas Vincit
LLC, a member of Fiduciario, LLC

By: _____

Jacob F. Watters, on behalf of 4222014, LLC, a
member of Fiduciario, LLC

(Dkt. No. 93-1 at 3 (highlighting added by Plaintiffs)). It is also clear to the Court that Plaintiffs, in conjunction with Watters, purchased Defendant Reticulum from Defendant Brown's bankruptcy estate for the purpose of gaining a material advantage in this lawsuit. Simply put, Plaintiffs were too clever by a half. In so doing, they have deprived this Court of jurisdiction over their claims against Reticulum. *S. Spring Hill Gold-Min. Co.*, 145 U.S. at 301 ("We cannot . . . consent to determine a controversy in which the [plaintiff] has become the *dominus litis* on both sides."). As a result, the Court has no alternative but to dismiss Plaintiffs' claims against Defendant Reticulum, as no genuine case or controversy exists any longer between those parties.

**B.  Whether the Court Has Jurisdiction to Hear the Remaining Claims**

The Court next addresses the question of whether dismissal of the claims against Reticulum also necessitates dismissal of the claims against the Durham Defendants and Brown.

The Durham Defendants contend that "Reticulum is not only the sole defendant of Plaintiffs' malicious civil prosecution claim, but also the primary defendant forming the linchpin of the entire conspiracy alleged in relation to each of Plaintiffs' claims." (Dkt. No. 111 at 4). The Durham Defendants argue that "[t]he Court should not allow Plaintiffs to continue to use their dominance over Defendant Reticulum to gain an unconstitutional advantage against the Durham

Defendants, whom Plaintiffs seek to hold jointly and severally liable with Defendant Reticulum for actions allegedly taken on behalf of Defendant Reticulum." (*Id.* at 2).

In response, Plaintiffs first contend that "there is no such thing as a 'primary defendant' (contrary to the Durham Defendants' argument) when it comes to a conspiracy, as all members of the conspiracy are jointly and severally liable for acts taken by any member of the conspiracy." (Dkt. No. 114 at 9). As such, Plaintiffs argue, "the Durham Defendants are each liable for their own tortious acts of conspiring against Dean to maliciously prosecute him civilly and criminally." (*Id.* at 10).

Plaintiffs next argue that the Court should "reject the Durham Defendants' argument that somehow Plaintiffs will manipulate Defendant Reticulum to prejudice the Durham Defendants," as "Reticulum has not litigated the case and has never had counsel appear in the case on its behalf" and "the Court entered default against Reticulum as of April 20, 2023." (*Id.*). Plaintiffs explain that "[a]fter Fiduciario purchased Reticulum in April 2024, Reticulum did not become an active participant in the case," and that "Reticulum still remains in default, still remains without counsel, and still has not filed any pleadings." (*Id.*).

Finally, Plaintiffs argue that "even if there were no longer any live case-or-controversy with respect to Plaintiffs' claims against Reticulum, Plaintiffs' claims against Brown and the Durham Defendants would remain very much alive," as "Plaintiffs assert a malicious criminal prosecution claim against Brown, and assert that Brown and the Durham Defendants conspired to commit malicious criminal prosecution and malicious civil prosecution." (*Id.* at 13). In sum, Plaintiffs argue that "[b]ecause Plaintiffs did not to have to sue Reticulum in this case for Plaintiffs to assert claims against Brown and the Durham Defendants, there is no reason why any dismissal of

Reticulum years into the lawsuit should also work a dismissal of Plaintiffs' claims against Brown and the Durham Defendants." (*Id.* at 16).

As an initial matter, the Court agrees with Plaintiffs that the dismissal of Reticulum provides no basis to dismiss Plaintiffs' claim for malicious criminal prosecution in its entirety. The same is true as to Plaintiffs' conspiracy claim which alleges that the Durham Defendants and Brown (independent of Reticulum) conspired to commit malicious criminal prosecution.[8] However, that does **not** mean that Plaintiffs can continue to make their claim for conspiracy to commit malicious *civil* prosecution, in which Reticulum was the only entity alleged to have committed the underlying tort. Neither can Plaintiffs rely upon the actions of Reticulum (as opposed to Brown and the Durham Defendants) to support their claim of conspiracy to commit malicious criminal prosecution. To hold otherwise would allow Plaintiffs to collude with Reticulum to the detriment of the other defendants in this case. While this result naturally flows from the Court's finding that Plaintiffs control Reticulum, the Court believes that further analysis of Supreme Court precedent on collusive cases is helpful to explain why such a result is not only necessary but just in this case.

The Supreme Court's decision in *Cleveland v. Chamberlain* is instructive. In that case, the Supreme Court dealt with a similarly "collusive" action and found dismissal necessary. 66 U.S. 419 (1861). In *Cleveland*, during the process of appeals, the appellant, Chamberlain, bought appellee, Cleveland, which included an assignment of Cleveland's cause of action. *Id.* at 421–22. There, dismissal was urged by third parties who claimed they would be harmed if Chamberlain

---

[8] The Durham Defendants contend that "the only claim asserted against the Durham Defendants is a conspiracy claim," meaning that "Plaintiffs' allegations regarding Defendant Reticulum are the linchpin for all of their claims against the Durham Defendants." (Dkt. No. 111 at 11). However, Defendants ignore that Plaintiffs have also sued Defendant Brown for malicious criminal prosecution (in addition to Reticulum) and have alleged that the Durham Defendants conspired with Defendant Brown in committing that tort. As such, there still exists a genuine case or controversy between Plaintiffs and the Durham Defendants for the Durham Defendants' alleged conspiracy with Defendant Brown to commit malicious criminal prosecution.

was successful in having the collusive appeal resolved successfully in his favor. *Id.* at 422–23. Upon review of the facts, the Court in *Cleveland* concluded in a unanimous opinion that such a case could not continue:

> This appeal must be dismissed. Selah Chamberlain is, in fact, both appellant and appellee. By the intervention of a friend he has purchased the debt demanded by Cleveland in his bill, and now ***carries on a pretended controversy*** by counsel, chosen and paid by himself, and on a record selected by them, ***for the evident purpose of obtaining a decision injurious to the rights and interests of third parties***.
> ….
> It is plain that this is no adversary proceeding, no controversy between the appellant and the nominal appellee. …. *here*, Chamberlain becomes the sole party in interest on both sides, makes up a record, and has a case made to suit himself, in order that he may obtain an opinion of this court, ***affecting the rights and interest of persons not parties to the pretended controversy***.

*Id.* at 426 (emphasis added).

While the concern in *Cleveland* centered on the fact that appellant, through collusive action with appellee, may "obtain[] a decision injurious to the rights and interests of third parties," such concern is equally applicable where, as here, Plaintiffs seek to hold Reticulum's co-defendants jointly and severally liable with Reticulum. As the Court cautioned a decade before *Cleveland*, courts should be wary where "the plaintiff and defendant have the same interest, and that interest [is] adverse and in conflict with the interest of third persons, whose rights would be seriously affected if the question of law was decided in the manner that both of the parties to th[e] suit desire it to be." *Lord*, 49 U.S. at 255. This Court is no less wary simply because those "third persons" are Reticulum's co-defendants. *See also United States v. Johnson*, 319 U.S. 302, 305 (1943) (noting that "the honest and actual antagonistic assertion of rights to be adjudicated [is] a safeguard essential to the integrity of the judicial process") (internal quotation omitted). If Plaintiffs are allowed to collude with Reticulum to hold the remaining defendants jointly and severally liable

for the resulting damages, Reticulum's co-defendants will be injured by "the pretended controversy." *Cleveland*, 66 U.S. at 426.

Another Supreme Court decision further illustrates this point. In *American Wood-Paper Company v. Heft*, the Court dismissed a patent infringement case on appeal where appellant had acquired the patents of appellee (upon which a defense to infringement was made in the lower court) and had granted appellee considerable stock in appellant as compensation. 75 U.S. 333, 335 (1869). The Court explained the necessity of dismissal as follows:

> If anything further was necessary to show that the litigation is no longer a real one, even if the suit should proceed, and the question of damages be reached, ***there would be the same interest on both sides***, Dixon, one of the defendants, since the sale of his patents, having a large interest on the side of the complainants, and, as defendant, would be subject to his payment of part, or the whole amount, of the damages recovered. Indeed, the weight of the proofs is, that ***he has bound himself to keep his co-defendants harmless***.

*Id.* at 336–37 (emphasis added). So too here, by acquiring and controlling Reticulum with respect to this action, Plaintiffs cannot now seek to hold Reticulum's co-defendants liable for Reticulum's actions in any conspiracy. Instead, as in *American Wood-Paper Company*, Plaintiffs have "bound [themselves] to keep [Reticulum's] co-defendants harmless." *Id.* at 337.

While Plaintiffs note that "[a]fter Fiduciario purchased Reticulum in April 2024, Reticulum did not become an active participant in the case" (Dkt. No. 114 at 10), Plaintiffs fail to appreciate that Reticulum's inaction, in of itself, illustrates the issue. Plaintiffs, through their purchase and control of Reticulum, have effectively bought and guaranteed its silence. That Reticulum "still remains in default, still remains without counsel, and still has not filed any pleadings" is precisely the issue. Plaintiffs affirmative conduct has ensured that Reticulum will mount no defense to their accusations—accusations which implicate Reticulum's co-defendants. While perhaps not as blatantly corrupt as puppeting a strawman defendant at trial, it no less implicates the concerns

19

regarding collusive suits espoused by the Supreme Court. Moreover, as discussed above, Plaintiffs *have* controlled Reticulum to take affirmative action with respect to this case by waiving privilege over, and directing the production of, the Withheld Documents held by the Durham Defendants. Having acted once, it can easily act again and as needed to protect and benefit its true masters. For the reasons described herein, the Court finds and makes clear that the only parties that remain in this case are Plaintiffs, Defendant Brown, and the Durham Defendants, and no acts or omissions of Reticulum, now owned and controlled by Plaintiffs (in conjunction with Watters), may be used to prove or support Plaintiffs' claims against Brown and the Durham Defendants.

## C. Conclusion

Having considered the Motion to Dismiss, the Court finds that it should be **GRANTED-IN-PART**. Accordingly, Plaintiffs' claims of malicious civil prosecution, malicious criminal prosecution, and conspiracy against Defendant Reticulum are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. It is further **ORDERED** that Plaintiffs may not rely upon any actions or conduct of Reticulum to prove or support Plaintiffs' claim of malicious criminal prosecution against Brown or Plaintiffs' claim of conspiracy against Brown and the Durham Defendants. As a result of the Court's order, the Court reiterates that the only claims that remain live and actionable in this suit are Plaintiffs' claims that: (1) Brown committed malicious criminal prosecution; and (2) the Durham Defendants and Brown conspired to commit such malicious criminal prosecution. It is so **ORDERED**.

**So ORDERED and SIGNED this 25th day of July, 2024.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE